UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

WABASH MEMORIAL HOSPITAL ASSOCIATION
HEALTH AND WELFARE PLAN and JASON
SHANNON,

                    Plaintiffs,                    EQUITABLE RELIEF IS SOUGHT

v.                                          Case No.

DANIEL McCARTNEY, MICHELLE McCARTNEY,
MONSEES & MAYER P.C., TIMOTHY W.
MONSEES, PHILLIP R. MARTENS, THE GUIRL
LAW FIRM, LLC, and JAMES N. GUIRL II,

                    Defendants.

## **<u>VERIFIED COMPLAINT</u>**

Plaintiffs Wabash Memorial Hospital Association Health and Welfare Plan ("Plan") and

Jason Shannon, Chairman of the Plan's Board of Managers and Plan fiduciary ("Shannon")

(together, "Plaintiffs"), for their Verified Complaint, state:

### **Introduction**

1.      The Plan and one of its fiduciaries bring this action to enforce the terms of an

ERISA[1]-governed welfare benefit plan and to remedy breaches of the Plan by a participant, his

spouse, and his representatives.

2.      Specifically, the Plan advanced benefits to defendant Daniel McCartney ("Mr.

McCartney"), a Plan participant, after he suffered an injury for which one or more third parties

were liable. The Plan initially advanced these benefits in reliance on Mr. McCartney's false

representation that no third parties were liable for his injury. Once the Plan learned that

---

[1]    ERISA stands for the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001
*et seq.*

Mr. McCartney was seeking to hold one or more third parties liable for his injury, the Plan conditioned its advancement of benefits on Mr. McCartney's agreement to honor the Plan's right to be subrogated to Mr. McCartney's claims and to reimburse the Plan for these benefits if he obtained any recovery from the responsible third parties.

3.     Notwithstanding his express agreement to honor the Plan's subrogation rights, Mr. McCartney settled his claims against the liable third parties without the Plan's requisite consent and to the Plan's detriment. And notwithstanding his express agreement to reimburse the Plan for the benefits it had advanced him, and despite having obtained a recovery from the third parties liable for his injuries sufficient to cover his, his attorneys', and the Plan's expenses, Mr. McCartney has refused to reimburse the Plan as promised.

4.     Instead, he, his wife, and his attorneys engaged a lien resolution agency to demand that the Plan waive the reimbursement rights that Mr. McCartney agreed to and have threatened to fraudulently manipulate the recovery that Mr. McCartney obtained from the liable third parties to defeat the Plan's reimbursement rights.

5.     When the Plan refused to yield to the Defendants' tactics, Mr. McCartney's attorneys sued the Plan in Illinois state court, based on claims that would not exist but for the unauthorized settlement, to attempt to deprive the Plan of the reimbursement rights that Mr. McCartney expressly agreed to, in contravention of the Plan's clear terms and ERISA.

6.     Plaintiffs thus bring this action under ERISA to enforce the Plan's terms and ERISA and to remedy the Defendants' breaches of the Plan and ERISA.

**Jurisdiction and Venue**

7.     The Court has jurisdiction over this action under ERISA §§ 502(e)(1) and 502(f), 29 U.S.C. §§ 1132(e)(1) and 1132(f), because Plaintiffs seek equitable relief under Title I of

ERISA and to remedy breaches of fiduciary duty under ERISA. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

8.      Venue is proper in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this district. Venue is proper in this division because the Plan is administered in Decatur, Illinois, which is in this division.

**Parties**

9.      Wabash Memorial Hospital Association is a non-profit health and welfare trust association. It sponsors the Plan.

10.     The Plan is an ERISA-regulated employee welfare benefit plan administered in Decatur, Illinois. The Plan's assets are held in trust exclusively to provide health and welfare benefits to the Plan's participants and beneficiaries and to pay the Plan's administrative expenses.

11.     Shannon is the Chairman of the Plan's Board of Managers and a Plan fiduciary. ERISA authorizes Shannon to bring this action on behalf of the Plan in his capacity as a Plan fiduciary.

12.     At all times relevant to this complaint, Mr. McCartney was and is a participant in the Plan. Upon information and belief, Mr. McCartney resides in Illinois.

13.     Defendant Michelle McCartney ("Ms. McCartney") was and is Mr. McCartney's wife. Upon information and belief, Ms. McCartney resides in Illinois.

14.     Defendant Monsees & Mayer P.C. ("Monsees & Mayer") is a law firm based in Kansas City, Missouri. Monsees & Mayer regularly conducts business in Illinois.

15.     Defendant Timothy Monsees ("Monsees") is an attorney affiliated with Monsees & Mayer engaged in the practice of law in Missouri and Illinois.

16.     Defendant Phillip Martens ("Martens") is an attorney affiliated with Monsees & Mayer engaged in the practice of law in Missouri and Illinois.

17.     Defendant the Guirl Law Firm, LLC ("Guirl Law Firm") is a law firm based in St. Louis, Missouri. Guirl Law Firm regularly conducts business in Illinois.

18.     Defendant James Guirl ("Guirl," and collectively with Monsees, Martens, Monsees & Mayer, and Guirl Law firm, "Attorney Defendants") is an attorney affiliated with Guirl Law Firm engaged in the practice of law in Missouri and Illinois.

## Factual Allegations

### I.     The Plan

19.     The Plan provides healthcare benefits for certain eligible employees and retirees (and their dependents) of the Norfolk Southern Railway.

20.     The Plan's terms are set forth in the Plan's Summary Plan Description ("SPD"), which is updated from time to time. The Plan's current terms related to subrogation and reimbursement rights were added to the SPD that was effective January 1, 2017, and have remained substantively unchanged in each subsequent SPD since then. A true and accurate copy of the January 1, 2017 SPD is attached hereto as **Exhibit A**.

21.     The Plan's SPD is binding on Plan participants and beneficiaries.

22.     Mr. McCartney is bound by the Plan's SPD because he is a Plan participant.

### A.  The Plan excludes benefits for third-party liabilities.

23.     When a Plan participant suffers an injury necessitating medical treatment, he may file a claim for benefits under the Plan to cover the expenses associated with that medical treatment.

24.     However, the Plan contains an exclusion for certain claims related to injuries that a Plan participant suffers due to the actions of a third party. Specifically, the Plan excludes benefits, and will not pay claims, for injuries, damages, or other harm that a plan participant suffers if a third-party bears legal liability for those injuries, damages, or harm ("Responsible Person Liabilities"). Ex. A at 18, 29.

25.     The Plan defines a person who bears legal liability for injuring or damaging a Plan participant as a "Responsible Person," and it defines the circumstances giving rise to the Responsible Person's legal liability to the Plan participant as the "Incident." *Id.* at 30-31.

26.     If the Plan participant requests or receives any benefits under the Plan for injuries he has suffered due to an Incident, the Plan defines that participant as a "Claimant." *Id.* at 30. In other words, a Claimant is a Plan participant who has submitted a claim for a certain type of benefits from the Plan.

27.     There are two ways that a participant generally becomes a Claimant. First, if the Plan has no reason to believe that a claim for benefits involves Responsible Person Liabilities (based on the circumstances of the claim), the Plan processes the claim in the ordinary course and, if otherwise covered under the terms of the Plan, pays it. In that circumstance, if the Plan later determines that the participant's injuries were caused by a Responsible Person, the Plan's procedure is to deem the participant a Claimant and continue paying related claims only if the Claimant expressly acknowledges the Plan's subrogation and reimbursement rights in writing. *See infra* Section I(C). Second, if a participant submits a claim for benefits that the Plan suspects (based on the circumstances of the claim) are Responsible Person Liabilities, the Plan initially denies the claim and asks the participant to complete an Accident Report Form to gather more

information about the circumstances giving rise to the claim and determine whether the participant is a Claimant.

28.     If, on the basis of the Accident Report Form, the Plan determines that the participant's injuries were *not* caused by a Responsible Person, the Plan will process, and, if otherwise covered under the terms of the Plan, pay the participant's claim.

29.     If, however, the Plan determines that the participant's injuries *were* caused by a Responsible Person, the Plan will deem the participant a Claimant, apply its exclusion for Responsible Person Liabilities, and deny the claim.

**B.  The Plan has discretion to advance benefits for Responsible Person Liabilities.**

30.     Even though the Plan excludes coverage for Responsible Person Liabilities, the Plan authorizes the Plan Administrator to advance benefits for what it knows are Responsible Person Liabilities to a Claimant under certain circumstances.

31.     First, a Claimant must notify the Plan within the time limits set forth in the Plan that he is seeking Plan benefits for Responsible Person Liabilities ("Reimbursable Benefits"). *Id.* at 34.

32.     Second, the SPD establishes the Plan's rights to be subrogated to a Claimant's rights against a Responsible Person and to be reimbursed for any Reimbursable Benefits it pays ("Subrogation and Reimbursement Rules"), and the Plan may advance Reimbursable Benefits to a Claimant only in accordance with its Subrogation and Reimbursement Rules. *Id.* at 29.

33.     Third, the Plan advances Reimbursable Benefits to a Claimant whose claims were initially denied only when the Claimant demonstrates financial hardship in paying his medical bills while he attempts to recover from a Responsible Person for his injuries.

34.     If such a Claimant requests that the Plan advance Reimbursable Benefits due to financial hardship, the Plan will agree to do so only if the Claimant expressly acknowledges the Plan's Subrogation and Reimbursement Rules in writing. *Id.* at 29, 32.

35.     Additionally, the Plan provides that any Claimant who accepts Reimbursable Benefits from the Plan expressly agrees to be subject to the Plan's Subrogation and Reimbursement Rules. *Id.* at 29, 34. This applies under all circumstances, including if the Plan later determines that claims it already paid without knowledge of a potential third party's liability are Responsible Person Liabilities.

**C. The Plan's Subrogation and Reimbursement Rules.**

36.     The Plan's Subrogation and Reimbursement Rules establish the Plan's subrogation and reimbursement rights with respect to Responsible Person Liabilities.

37.     If the Plan advances Reimbursable Benefits to a Claimant, and the Claimant has lawful claims against a Responsible Person for Responsible Person Liabilities, the Plan has the right to be substituted in the place of the Claimant with respect to those claims ("Subrogation Right"). Ex. A at 29.

38.     The Plan also has a reimbursement right with respect to any recovery that a Claimant obtains from a Responsible Person for Responsible Person Liabilities ("Third-Party Recovery"). Specifically, if the Plan advances Reimbursable Benefits to a Claimant, and the Claimant obtains the right to recover against, or a Third-Party Recovery from, a Responsible Person for the Responsible Person Liabilities, the Claimant must immediately reimburse the Plan for all of the Reimbursable Benefits the Plan advanced before the Claimant pays any other expenses ("Reimbursement Right"). *Id.* at 32, 34.

39.     The Plan's Reimbursement Right is not subject to (i) any offset, including any offset related to any attorneys' fees, costs, or other expenses the Claimant incurs in obtaining the Third-Party Recovery, or (ii) any other equitable doctrines, such as the "make-whole" or "common fund" doctrines. *Id.* at  32, 34, 35. In fact, a Claimant must indemnify the Plan if his attorney seeks to recover fees from the Plan for work associated with pursuing the Responsible Person Liabilities or obtaining a Third-Party Recovery. *Id.* at 35.

40.     Several Plan terms facilitate the Plan's Subrogation and Reimbursement Rights.

41.     For example, the Plan requires a Claimant to (a) comply with the Plan's Subrogation and Reimbursement Rules and claims and records procedures, (b) cooperate fully with the Plan to recover Reimbursable Benefits and enforce the Plan's Reimbursement and Subrogation Rights, and (c) refrain from doing anything that impairs, prejudices, or compromises the Plan's Subrogation and Reimbursement Rights without the Plan's written consent. Ex. A at 34. Claimants are also responsible for ensuring that their attorneys and others acting on their behalf abide by these requirements. *Id.* at 33.

42.     Claimants must provide the Plan with advance notice of any settlement of a claim for Responsible Person Liabilities. *Id.* at 35.

43.     Claimants who obtain the right to recover against, or a Third-Party Recovery from, a Responsible Person for Responsible Person Liabilities grant the Plan an equitable lien on, and constructive trust over, the *entire* Third-Party Recovery. *Id.* at 35.

44.     And upon receipt of a Third-Party Recovery, Claimants and their attorney(s) must (a) separate and hold the entire Third-Party Recovery until the Claimant has satisfied the Plan's Reimbursement Right, though the Plan may enforce its Reimbursement Right even if the

Claimant and his attorney(s) fail to do so; and (b) immediately reimburse the Plan for the Reimbursable Benefits. *Id.* at 35.

45.　　Illinois Rule of Professional Conduct 1.15 also requires attorneys to safeguard property in their possession that belongs to a third party.

46.　　Claimants who wait more than 60 days to use a Third-Party Recovery to reimburse the Plan for all Reimbursable Benefits must also pay interest on the Reimbursable Benefits at a rate of 1% per month until the Plan is fully reimbursed. Ex. A at 37.

47.　　Additionally, the Plan may hold anyone, including a Claimant's spouse, beneficiary, and attorney, who distributes a Third-Party Recovery in violation of the Plan's Subrogation and Reimbursement Rights personally liable for its damages. *Id.* at 34.

48.　　The Plan may take all action necessary to ensure compliance with the Plan's Subrogation and Reimbursement Rules and to enforce its Subrogation and Reimbursement Rights. *Id.* at 36. Claimants must indemnify the Plan for all attorneys' fees, costs, and other expenses that the Plan incurs in pursuing any such legal action.

49.　　In sum, under the terms of the Plan, the Plan acquires an equitable lien and constructive trust over the entirety of a Third-Party Recovery until it has recovered (a) all Reimbursable Benefits it advanced to the Claimant for Responsible Person Liabilities, (b) any interest due on those Reimbursable Benefits, and (c) any attorneys' fees, costs, and expenses the Plan incurs in recovering those amounts.

## II.　　Mr. McCartney's Incident

50.　　On or about October 15, 2016, Mr. McCartney suffered an injury ("Injury") that arose from an Incident in Pike County, Illinois.

51.　　Thereafter, Mr. McCartney obtained medical treatment for the Injury.

### III.  The Plan Advances Reimbursable Benefits to Mr. McCartney.

52.  Mr. McCartney submitted a claim for benefits under the Plan for medical treatment for the Injury.

53.  The nature of Mr. McCartney's Injury, which included broken bones, caused the Plan to believe that a third party may have caused it, so the Plan initially denied Mr. McCartney's claim and requested more information from Mr. McCartney about the Injury.

54.  In his Accident Report Form, attached hereto as **Exhibit B**, Mr. McCartney denied the Injury was "the result of any type of accident involving another party" and said only that he was injured "in the woods" when he "fell from a deer/tree stand after the straps broke." *Id.*

55.  In reliance on Mr. McCartney's representations, the Plan processed and paid Mr. McCartney's claims.

56.  By accepting these benefits from the Plan, Mr. McCartney agreed to the Plan's terms governing those benefits.

57.  In fact, however, in October 2018, Mr. McCartney, through the Attorney Defendants, sued third parties he alleged were responsible for the Injury ("McCartney Responsible Parties"). That lawsuit is pending in Illinois Circuit Court and is captioned as *McCartney et al. v. Umek et al.*, No. 2018L14 ("Injury Action").

58.  Mr. McCartney did not notify the Plan of the Injury Action when he filed it. Nor did Mr. McCartney notify the Plan that one or more Responsible Parties may be liable for his Injury.

59.  Ms. McCartney is a co-plaintiff in the Injury Action.

60.     The McCartney Responsible Parties are Responsible Persons under the Plan, and Mr. McCartney became a Claimant under the Plan when he submitted a claim for benefits arising from the Injury.

61.     In total, the Plan advanced Mr. McCartney $438,198.91, including $425,136.09 in medical claims, $6,708.87 in provider network access fees, and $6,354.95 in dues (collectively, "McCartney Reimbursable Benefits"). Mr. McCartney accepted all of the McCartney Reimbursable Benefits that the Plan advanced.

62.     The Plan first learned of the existence of the McCartney Responsible Parties and the Injury Action in January 2019, when the Attorney Defendants contacted the Plan about the Plan's Subrogation and Reimbursement Rules. A true and correct copy of the Attorney Defendants' January 2019 letter to the Plan is attached hereto as **Exhibit C**.

63.     The Plan informed the Attorney Defendants that it would have denied Mr. McCartney's claim for benefits arising from the Injury as Responsible Person Liabilities if Mr. McCartney had disclosed the third parties' potential responsibility for the Injury when he submitted the claim and the Accident Report Form. The Plan also informed the Attorney Defendants of its Subrogation and Reimbursement Rights and of its expectation that it would be "reimbursed first and in full" out of any Third-Party Recovery. A true and correct copy of the Plan's email to the Attorney Defendants is attached hereto as **Exhibit D**.[2]

64.     In a phone call on January 31, 2019, Christy McNeely, a paralegal at Monsees & Mayer, asked Angie Vorties, a Plan representative, if the Plan would negotiate its lien. Ms. Vorties reminded Ms. McNeely that the Plan was entitled to full reimbursement and would

---

[2]     Plaintiffs have redacted certain undisputed, nonmaterial information from Exhibit D and other exhibits to protect Mr. McCartney's personal information.

not negotiate its lien absent an extremely low Third-Party Recovery or other extenuating factors affecting the Recovery.

65.     The next week, the Plan also informed the Attorney Defendants of the then-current amount of the Plan's lien, $419,729.73, and included an itemization of the McCartney Reimbursable Benefits. *Id.*

66.     Had Mr. McCartney responded truthfully to the Plan's inquiry regarding the genesis of the Injury on the Accident Report Form, the Plan, under its standard procedure, would have considered advancing Mr. McCartney the McCartney Reimbursable Benefits *only* if Mr. McCartney had (1) demonstrated financial hardship in paying his medical bills, *and* (2) expressly acknowledged the Plan's Subrogation and Reimbursement Rules in writing.

67.     Even still, when Mr. McCartney accepted the McCartney Reimbursable Benefits, he expressly agreed to honor the Plan's Subrogation and Reimbursement Rules, including the Plan's Subrogation and Reimbursement Rights.

68.     Once the Plan learned of the McCartney Responsible Parties and the Injury Action, the Plan also required Mr. McCartney to execute an Acknowledgment of the Wabash Memorial Hospital Association Benefits Plan Provisions ("Acknowledgement"), to continue receiving advanced Reimbursable Benefits.

69.     Mr. McCartney executed the Acknowledgment on February 8, 2019. A true and accurate copy of that form is attached hereto as **Exhibit E**.

70.     In the Acknowledgment, Mr. McCartney (a) designated the Attorney Defendants as his representatives in the Injury Action; and (b) agreed that the Attorney Defendants are bound by the Plan's Subrogation and Reimbursement Rules, including the Plan's Subrogation and Reimbursement Rights. *Id.* at 2.

12

71.     The Plan agreed to continue advancing Reimbursable Benefits only after and in reliance on Mr. McCartney's executing and returning the Acknowledgment, consistent with its usual practice when it discovers that it has paid claims for Responsible Person Liabilities without knowledge of a third party's potential liability for the claims. *See* Ex. D.

72.     Consistent with its Subrogation and Reimbursement Rights, the Plan kept the Attorney Defendants apprised of its lien amount as it continued to increase.

73.     On April 17, 2019, the Plan emailed the Attorney Defendants that the Plan's lien had increased and asked them to notify the Plan of any changes in the status of the Injury Action. A true and correct copy of the Plan's April 17 email is attached hereto as **Exhibit F**.

74.     The Attorney Defendants did not notify the Plan of any changes in the status of the Injury Action in response to the Plan's April 17 email.

75.     On June 23, 2021, Ms. Vorties once again reminded Ms. McNeely in a phone call of the Plan's Subrogation and Reimbursement Rights and that the Plan expected to be reimbursed in full for the McCartney Reimbursable Benefits if Mr. McCartney obtained any Third-Party Recovery.

**IV.     The McCartneys settle the Injury Action without authorization.**

76.     On June 30, 2021, the Attorney Defendants requested an updated itemization of the McCartney Reimbursable Benefits. A true and correct copy of the Attorney Defendants' June 30 email is attached hereto as **Exhibit G**.

77.     On July 19, the Plan responded with an updated itemization and amount of the Plan's lien, which had continued to increase since April 2019 as "Mr. McCartney continue[d] to treat"—in other words, as Mr. McCartney had continued to accept McCartney Reimbursable

Benefits under the Plan's terms. A true and correct copy of the Plan's July 19 email is attached hereto as **Exhibit H**.

78.    Upon information and belief, even before the Plan had provided the Attorney Defendants with the updated July 19 itemization, on or about July 13, 2021, the McCartneys, through the Attorney Defendants, settled the Injury Action with the McCartney Responsible Parties for $2 million ("Settlement").

79.    Upon information and belief, the Settlement exceeds the total amount of the McCartney Reimbursable Expenses and all other outstanding liens and expenses that Mr. McCartney owes in connection with the Injury and his pursuit of the Settlement, including the Attorney Defendants' fees and expenses and a Medicare lien for about $40,000.

**V.    Defendants violate the Plan's Subrogation and Reimbursement Rights.**

80.    None of the Defendants notified the Plan before agreeing to the Settlement.

81.    None of the Defendants requested the Plan's consent to the Settlement.

82.    The Plan did not give Mr. McCartney or the Attorney Defendants written approval for the Settlement.

83.    The Settlement impairs, prejudices, and compromises the Plan's Subrogation and Reimbursement Rights.

84.    For example, the Settlement does not preserve or protect the Plan's Reimbursement Rights or ensure that those rights are satisfied out of the Settlement.

85.    Had Mr. McCartney or the Attorney Defendants notified the Plan of the proposed Settlement, the Plan would have objected to, and precluded Mr. McCartney from entering into, any terms of the Settlement inconsistent with or prejudicial to the Plan's Subrogation and Reimbursement Rights.

VI.     **Defendants demand the Plan compromise its Reimbursement Rights.**

86.     On July 21, 2021, Ashley Wieland, a Lien Resolution Specialist with Synergy

Settlement Services, emailed the Plan to obtain information about the McCartney Reimbursable

Benefits. A copy of Wieland's communication is attached as **Exhibit I**, and a copy of Wieland's

follow-up email from the next day is attached as **Exhibit J**.

87.     In her communication, Wieland acknowledged the Plan's Reimbursement Rights,

requested a copy of the Plan's SPD, and asked that the Plan direct all future correspondence

regarding the McCartney Reimbursable Benefits to her.

88.     In response, the Plan sent Wieland an itemization of the McCartney Reimbursable

Benefits and requested information about the status of the Settlement. *See* Ex. J.

89.     On August 3, 2021, Wieland replied to the Plan's itemization, revealed that the

McCartneys had settled the Injury Action, and requested that the Plan waive its Reimbursement

Rights. A copy of Ms. Wieland's response is attached as **Exhibit K**. The Plan declined that

request. *Id.*

90.     On August 25, 2021, Wieland represented that the parties to the Injury Action

were still finalizing the written agreement effecting the Settlement and threatened to structure the

Settlement payment process to attempt to defeat the Plan's Reimbursement Rights. Specifically,

Wieland stated that if the Plan refused to waive its Reimbursement Rights as to the McCartney

Reimbursable Benefits, the Defendants would draft the written agreement effecting the

Settlement to allocate the Settlement to Ms. McCartney, rather than Mr. McCartney, to "negat[e

the Plan's] recovery rights." *Id.*

91.     On September 3, 2021, the Plan, through counsel, contacted the Defendants

demanding that they comply with the Plan's Subrogation and Reimbursement Rules, including

that they (a) confirm in writing the status of the Settlement and Mr. McCartney's obligation to obtain the Plan's approval before entering into it; and (b) cease all communications from Wieland and demands that the Plan compromise its Subrogation and Reimbursement Rights. A copy of this letter is attached as **Exhibit L**.

92.     The Defendants did not respond to the Plan.

93.     Instead, despite the Plan's instructions, Wieland responded to the Plan's September 3 letter on September 8, 2021. Wieland admitted that the Plan was entitled to a portion of the McCartney Reimbursable Benefits. However, Wieland asserted that the Plan is obligated to pay a portion of the attorneys' fees and costs that Mr. McCartney incurred in obtaining the Settlement and that the Plan is entitled to recover only $258,537.36 to satisfy the McCartney Reimbursable Benefits. A copy of this email is attached as **Exhibit M**.

94.     Wieland's demand that the Plan contribute to Mr. McCartney's attorneys' fees is contrary to the Plan's terms.

95.     The Plan responded to Wieland's September 8 email on September 20, 2021. The Plan rejected Wieland's contention that it must contribute to Mr. McCartney's attorneys' fees and expenses and reiterated its demand that the Defendants comply with the Plan's terms, including those related to the Plan's Subrogation and Reimbursement Rights. A copy of this letter attached hereto as **Exhibit N**.

**VII.    The Attorney Defendants sue the Plan.**

96.     Unbeknownst to the Plan at the time, the Attorney Defendants sued the Plan in Illinois Circuit Court on September 13, 2021, in an action captioned *Monsees & Mayer P.C. et al. v. Wabash Memorial Hospital Association Health & Welfare Plan*, No. 2021L9 ("Common-

16

Fund Claim"). A copy of the Attorney Defendants' Common-Fund Claim petition is attached as

**Exhibit O**.

97.     As of the date of this filing, the Plan still has not received service of process for

the Common-Fund Claim. The Plan learned of the Common-Fund Claim through Wieland.

98.     The Common-Fund Claim is premised on the Settlement.

99.     In the Common-Fund Claim, the Attorney Defendants admit that the McCartney

Reimbursable Benefits total $425,275.52 and that the Plan has a valid subrogation interest.

However, the Attorney Defendants maintain that the Illinois common fund doctrine renders the

Plan liable for portion of the attorneys' fees and costs that Mr. McCartney incurred in obtaining

the Settlement.

100.    The Attorney Defendants premise their request on Illinois state court decisions

*Scholtens v. Schneider*, 671 N.E.2d 657 (Ill. 1996), *Bishop v. Burgard*, 764 N.E.2d 24 (Ill. 2002),

and *Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health & Welfare Trust Fund*, 35 N.E.3d

988 (Ill. Ct. App. 2015). In those cases, the Illinois state courts have declined to recognize that

ERISA preempts claims like the Attorney Defendants' premised on the Illinois common fund

doctrine. *Compare, e.g.*, *Schrempf*, 35 N.E.3d at 994 ("We recognize that the *dicta* of *McCutchen*

may foreshadow a different result than our supreme court has pronounced in the past. Given the

strong and clear pronouncements of our supreme court [in *Bishop*], however, we are unwilling to

adopt such an interpretation of *McCutchen* that could lead to the demise of a deeply rooted

equitable remedy in Illinois, the common fund doctrine, with respect to self-funded employee

benefit plans.") *with US Airways, Inc. v. McCutchen*, 569 U.S. 88, 91 (2013) (holding that

"equitable rules" such as the common fund doctrine cannot "override the clear terms of a plan");

*Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680,

690 (7th Cir. 2003) (holding that ERISA preempts any application of Illinois common fund doctrine that "contradicts the terms of the Plan and therefore contravenes ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents").

**VIII.   Defendants continue to violate the Plan's Reimbursement Rights.**

101.    Neither Mr. McCartney nor the Attorney Defendants reimbursed the Plan for the McCartney Reimbursable Benefits before taking possession of the Settlement.

102.    Upon information and belief, Mr. McCartney and the Attorney Defendants took possession of the Settlement.

103.    Upon information and belief, upon receiving the Settlement, Mr. McCartney and the Attorney Defendants did not segregate the Settlement from all other assets.

104.    Neither Mr. McCartney nor the Attorney Defendants have reimbursed the Plan for the McCartney Reimbursable Benefits.

105.    Upon information and belief, Mr. McCartney and the Attorney Defendants have distributed some or all of the Settlement to persons or entities other than the Plan.

106.    Defendants' distribution violates the express terms of the Plan and irreparably threatens the Plan's Subrogation and Reimbursement Rights. In particular, the Defendants' conduct with respect to the Settlement threatens to preclude the Plan from ever recovering the McCartney Reimbursable Benefits and other amounts the Plan is entitled to recover, including any interest that becomes due on the McCartney Reimbursable Benefits and the attorneys' fees and expenses the Plan incurs in prosecuting this action and, if necessary, defending the Common-Fund Claim. Throughout the remainder of this complaint, the Plan refers to all amounts it is entitled to recover from the Defendants under the terms of the Plan, collectively, as the "McCartney Lien."

**Claims**

**Count I: Declaration of Plan's Rights to, and Imposition of Equitable Lien and Constructive Trust over, Settlement, and Specific Performance**

107. Plaintiffs reallege and incorporate by reference the allegation in paragraphs 1 through ☐ of this complaint as though fully set forth herein .

108. Mr. McCartney agreed to abide by the Plan's terms, including the Plan's Subrogation and Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

109. The Plan's advancing Mr. McCartney the McCartney Reimbursable Benefits was contingent on Mr. McCartney's agreement to the Plan's terms, including the Plan's Subrogation Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

110. When he accepted the McCartney Reimbursable Benefits, Mr. McCartney agreed to all of the Plan's terms, including the Plan's Subrogation Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

111. Mr. McCartney is responsible for ensuring that he, Ms. McCartney, the Attorney Defendants, and any others representing him abide by the Plan's Subrogation and Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

112. Defendants have breached the Plan's terms, and specifically the Plan's Subrogation and Reimbursement Rules, in at least the following ways:

   a. By failing to provide written notice to the Plan in advance of agreeing to the Settlement;

   b. By agreeing to the Settlement without the Plan's written consent;

   c. By agreeing to the Settlement and any written agreement effecting it, which are contrary to the Plan's Subrogation and Reimbursement Rules;

d.  By agreeing to the Settlement and any written agreement effecting it without preserving the Plan's rights and defenses and contrary to the Plan's interests;

e.  By receiving the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

f.  By failing to segregate the entire Settlement upon receipt;

g.  By distributing the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

h.  By demanding, directly or through an agent, that the Plan compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

i.  By threatening to defraud the Plan if the Plan refused to compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

j.  By suing the Plan in Illinois state court for relief that contravenes the Plan's terms and ERISA; and

k.  By failing to reimburse the Plan for the full amount of the McCartney Lien.

113.  Defendants' breaches of the Plan have damaged and will continue to irreparably harm the Plan.

114.  The Plan has an equitable lien and constructive trust over funds that the Defendants possess or received from the Settlement, retroactively to the date that Defendants received any or all of the Settlement, until it is reimbursed in full for the McCartney Lien pursuant to the Plan's terms. The value of the McCartney Lien will continue to increase as the Plan incurs attorneys' fees and expenses to enforce the Plan's Subrogation and Reimbursement Rules, including its Subrogation and Reimbursement Rights, and as interest accrues on the McCartney Reimbursable Expenses.

115. Defendants must hold the entire Settlement, retroactively to the date that Defendants received any or all of the Settlement, in constructive trust for the Plan until the Plan is reimbursed in full for the McCartney Lien pursuant to the Plan's terms.

116. Defendants have a fiduciary relationship with the Plan with respect to the Settlement and the constructive trust, retroactively to the date that Defendants received any or all of the Settlement, and Defendants may not dispose of assets subject to the McCartney Lien or violate fiduciary duties to the Plan relating to those assets.

117. Accordingly, Plaintiffs seek equitable relief against the Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enforce the Plan's terms and ERISA by requesting that the Court (a) declare that the Plan is entitled to recover the full amount of the McCartney Lien; (b) impose an equitable lien and constructive trust over the entire Settlement until the McCartney Lien has been satisfied in full; (c) order the Defendants to pay the McCartney Lien; and (d) enjoin the Defendants from dispensing any of the Settlement until the McCartney Lien has been satisfied in full.

### Count II: Rescission of the Agreement for McCartney Reimbursable Benefits and Specific Performance

118. Plaintiffs reallege and incorporate by reference the allegation in paragraphs 1 through ☐ of this complaint as though fully set forth herein .

119. Mr. McCartney is bound by the Plan's terms, including the Plan's Subrogation and Reimbursement Rules.

120. The Plan paid the McCartney Reimbursable Benefits in reliance on Mr. McCartney's material misrepresentation regarding the cause of his Injury.

121. Mr. McCartney expressly agreed to abide by the Plan's Subrogation and Reimbursement Rules when he accepted the McCartney Reimbursable Benefits.

122.     The Plan continued to advance the McCartney Reimbursable Benefits after it learned of the Injury Action in reliance on Mr. McCartney's explicit acknowledgment of, and agreement to abide by, the Plan's Subrogation and Reimbursement Rules.

123.     Mr. McCartney is responsible for ensuring that he, Ms. McCartney, the Attorney Defendants, and any others representing him abide by the Plan's Subrogation Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

124.     Defendants have breached the Plan's terms, and specifically the Plan's Subrogation and Reimbursement Rules, in at least the following ways:

a. By failing to provide written notice to the Plan in advance of agreeing to the Settlement;

b. By agreeing to the Settlement without the Plan's written consent;

c. By agreeing to the Settlement and any written agreement effecting it, which are contrary to the Plan's Subrogation and Reimbursement Rules;

d. By agreeing to the Settlement and any written agreement effecting it without preserving the Plan's rights and defenses and contrary to the Plan's interests;

e. By receiving the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

f. By failing to segregate the entire Settlement upon receipt;

g. By distributing the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

h. By demanding, directly or through an agent, that the Plan compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

     i.    By threatening to defraud the Plan if the Plan refused to compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

     j.    By suing the Plan in Illinois state court for relief that contravenes the Plan's terms and ERISA; and

     k.    By failing to reimburse the Plan for the full amount of the McCartney Lien.

125.    Defendants' breaches of the Plan have damaged and will continue to irreparably harm the Plan.

126.    Accordingly, Plaintiffs seek equitable relief against the Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin Defendants' violations of ERISA and enforce the Plan's terms and ERISA by requesting that the Court (a) rescind the Plan's advancement of the McCartney Reimbursable Benefits, and (b) restore the Plan to the position it would have been in had it never entered into the agreement with Mr. McCartney to advance the McCartney Reimbursable Benefits by requiring Mr. McCartney to pay the Plan (i) the amount that the Plan advanced for the McCartney Reimbursable Benefits, (ii) the attorneys' fees, costs, and expenses the Plan has incurred in enforcing the Plan's Subrogation and Reimbursement Rules, including in prosecuting this action and in defending against the Attorney Defendants' Action, and (iii) interest.

### Count III: Enjoinment of the Common-Fund Claim

127.    Plaintiffs reallege and incorporate by reference the allegation in paragraphs 1 through ___ of this complaint as though fully set forth herein.

128.    Defendants' agreement to the Settlement without the Plan's written authorization violated the Plan's Subrogation and Reimbursement Rules, and specifically the Plan's Subrogation and Reimbursement Rights.

129. Defendants' agreement to the Settlement without the Plan's written authorization prejudiced the Plan. For example, the Plan was deprived of the opportunity to (a) preserve its Subrogation and Reimbursement Rights in any settlement with the McCartney Responsible Parties and any written agreement effecting it, (b) ensure that it would recover all of the McCartney Reimbursable Benefits, and (c) enforce the McCartney Lien.

130. Had the Plan had the opportunity to participate in and approve of any settlement with the McCartney Responsible Parties, as the Plan Subrogation and Reimbursement Rules require, the Plan would have (a) preserved its Subrogation and Reimbursement Rights in any settlement with the McCartney Responsible Parties and any written agreement effecting it, (b) ensured that it would recover all of the McCartney Reimbursable Benefits, and (c) enforced the McCartney Lien.

131. Because the Common-Fund Claim is premised on the Settlement, the Attorney Defendants could not pursue the Common-Fund Claim but for the Settlement.

132. By entering into the Settlement, in violation of the Plan's Subrogation and Reimbursement Rules, Defendants manufactured their cause of action in the Common-Fund Claim. Defendants also failed to preserve in the Settlement the Plan's defenses to the Common-Fund Claim, in violation of the Plan's terms.

133. Had the Plan had the opportunity to participate in and approve of any settlement with the McCartney Responsible Parties, as the Plan Subrogation and Reimbursement Rules require, the Plan would have defenses to the Common-Fund Claim premised on that settlement that it does not currently have because Defendants entered into the Settlement in violation of the Plan's Subrogation and Reimbursement Rules.

134.    Defendants' agreement to the Settlement thus also prejudices the Plan because the Plan lacks defenses to the Common-Fund Claim under the agreement effecting the Settlement that the Plan would have had but for the Defendants' agreeing to the Settlement in contravention of the Plan's terms.

135.    The Common-Fund Claim also violates ERISA because the Attorney Defendants seek to enforce against the Plan a settlement agreement that violates the Plan's terms.

136.    If the Plan has to defend the Common-Fund Claim under these circumstances, the Plan will be irreparably harmed. For example, the Plan will be forced to defend the Common-Fund Claim, which is based on the Settlement that Defendants entered into in violation of the Plan, without (a) settlement terms that the Plan would have required for any settlement with the McCartney Responsible Parties to protect the Plan's Subrogation and Reimbursement Rights, and (b) the full panoply of remedies and defenses it could invoke under the Plan and ERISA, which the state court does not have jurisdiction to hear.

137.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), expressly authorizes this Court to enjoin the Common-Fund Claim because it creates a specific and uniquely federal right and remedy, enforceable only in a federal court of equity, that can be given its intended scope only by a stay of the Common-Fund Claim, because the Common-Fund Claim violates ERISA and the terms of the Plan, and the Plan cannot present its defenses under ERISA in the Common-Fund Claim.

138.    Enjoinment of the Common-Fund Claim is necessary to prevent irreparable injury to Plaintiffs by having to defend the Common-Fund Claim at all. Because the Common-Fund Claim would not exist but for the unauthorized Settlement that is contrary to the Plan's terms, if the Plan has to defend the Common-Fund Claim at all, it will irreparably lose its ability to

vindicate its rights under the Plan to consent to and approve of any settlement of any Responsible Party Liabilities.

139.    Enjoinment of the Common-Fund Claim is necessary to prevent the state court from so interfering with this Court's consideration of Plaintiffs' claims as to seriously impair this Court's flexibility and authority to decide them, because the Attorney Defendants' claims in the Common-Fund Claim threaten to deprive this Court of jurisdiction altogether.

140.    Accordingly, Plaintiffs seek equitable relief against the Attorney Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin Defendants' violations of ERISA and enforce the Plan's terms and ERISA by requesting that the Court preliminarily and permanently enjoin the Common-Fund Claim to prevent irreparable harm to the Plan.

### Count IV: Breach of Fiduciary Duty

141.    Plaintiffs reallege and incorporate by reference the allegation in paragraphs 1 through ___ of this complaint as though fully set forth herein.

142.    As set forth above, Defendants are in possession of assets that in equity and good conscience are property of the Plan because the Plan is entitled to an equitable lien and constructive trust over the Settlement, retroactively to the date that Defendants received any or all of the Settlement.

143.    The assets held by Defendants in constructive trust for the Plan are "plan assets" within the meaning of ERISA § 3(42), 29 U.S.C. § 1002(42).

144.    Defendants are "fiduciaries" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they have exercised authority or control over management or disposition of Plan assets.

145.    ERISA § 404, 29 U.S.C. § 1104, requires Defendants to discharge their fiduciary duties to the Plan in accordance with the Plan's terms, to hold the Plan's assets in constructive trust for the Plan, and to reimburse the Plan for the full amount of the McCartney Lien.

146.    Defendants have violated their fiduciary duties in at least the following ways:

a.  By receiving the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

b.  By failing to segregate the entire Settlement upon receipt;

c.  By distributing the Settlement without immediately reimbursing the Plan for the McCartney Reimbursable Benefits;

d.  By demanding, directly or through an agent, that the Plan compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

e.  By threatening to defraud the Plan if the Plan refused to compromise its Subrogation and Reimbursement Rights, in contravention of the Plan's terms;

f.  By failing to reimburse the Plan for the full amount of the McCartney Lien; and

g.  By suing the Plan in Illinois state court for relief that contravenes the Plan's terms and ERISA.

147.    Defendants' breaches of fiduciary duties have harmed the Plan.

148.    Accordingly, the Plan seeks monetary and equitable relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA § 409, 29 U.S.C. § 1109, to remedy Defendants' breaches of fiduciary duty under ERISA.

## Prayer for Relief

WHEREFORE, Plaintiffs request the following relief:

(a)      A preliminary injunction, to be made permanent, under ERISA § 502(a)(3),

29 U.S.C. § 1132(a)(3), prohibiting any Defendant from:

    (i)      Dispensing or disposing of any proceeds of the Settlement that any of the

        Defendants possess or received until the Plan has been made whole as set

        in this complaint;

    (ii)     Violating the Plan's Subrogation or Reimbursement Rules including the

        Plan's Subrogation and Reimbursement Rights;

    (iii)    Pursuing the Common-Fund Claim or initiating or pursuing any other state

        court proceedings to defeat the Plan's terms, including to require the Plan

        to contribute to Mr. McCartney's attorneys' fees;

    (iv)     Attempting to enforce any order or judgment that may be issued in the

        Common-Fund Claim or any other state court proceedings that is contrary

        to the Plan's terms or otherwise prejudices the Plan;

(b)      Equitable remedies against Defendants, pursuant to Section 502(a)(3) of ERISA,

29 U.S.C. § 1132(a)(3), in the form of:

    (i)      An order (a) rescinding the Plan's advancement of the McCartney

        Reimbursable Benefits, and (b) restoring the Plan to the position it would

        have been in had it never advanced the McCartney Reimbursable Benefits

        by awarding the Plaintiffs equitable restitution, surcharge, or disgorgement

        and requiring Mr. McCartney to pay the Plan (i) the amount that the Plan

        advanced for the McCartney Reimbursable Benefits, (ii) the attorneys'

        fees, costs, and any other expenses the Plan has incurred in enforcing the

        Plan's Subrogation and Reimbursement Rules, including in prosecuting

this action and in defending against the Common-Fund Claim, and any

judgment the state court enters in the Common-Fund Claim, and

(iii) interest; or

    (ii)    In the alternative, (a) imposition of an equitable lien and a constructive

trust over (1) the entire Settlement held or received by Defendants,

retroactively to the date that any or all of Defendants received any or all of

the Settlement, and (2) any judgment against the Plan in the Common-

Fund Claim, and (b) an order requiring Defendants, before distributing any

of the Settlement, to reimburse the Plan for (1) the full amount of the

McCartney Lien, and (2) any judgment against the Plan in the Common-

Fund Claim, interest, and all attorneys' fees the Plan incurs defending that

action;

(c)    A declaration, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), that:

    (i)    The Plan has no obligation to contribute to the attorneys' fees, costs, or

other expenses that Mr. McCartney incurred in pursuing and obtaining the

Settlement; and

    (ii)    Defendants are fiduciaries within the meaning of ERISA § 3(21)(A),

29 U.S.C. § 1002(21)(A), with respect to Plan assets;

(d)    Damages in an amount to be proven at trial for Defendants' breaches of fiduciary

duties under ERISA;

(e)    That the Court retain jurisdiction to enforce the equitable remedies sought by the

Plaintiffs in this Complaint until such time as the Defendants have satisfied the McCartney

Lien in full;

(f)    To the extent not encompassed in full by the satisfaction of the Plan's equitable lien, an award of attorneys' fees and costs pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

(g)    Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

By:*/s/ Philip J. Gutwein II*
    Philip J. Gutwein II
    Stephanie L. Gutwein
    Emily A. Kile-Maxwell
    FAEGRE DRINKER BIDDLE & REATH LLP
    300 North Meridian Street, Suite 2500
    Indianapolis, IN  46204
    Tel.: (317) 237-0300
    Fax: (317) 237-1000
    philip.gutwein@faegredrinker.com
    stephanie.gutwein@faegredrinker.com
    emily.kilemaxwell@faegredrinker.com

## Certificate of Service

I hereby certify that on October 14, 2021, the foregoing document was filed electronically. I also certify that I will cause this filing to be served personally through a process server on each of the following Defendants:

Daniel McCartney
5 Quail Ridge Drive
Pittsfield, IL 62363

Michelle McCartney
5 Quail Ridge Drive
Pittsfield, IL 62363

Monsees & Mayer P.C.
4717 Grand Avenue, Suite 820
Kansas City, MO 64112

Timothy W. Monsees
4390 Stafford Terrace
Wellsville, KS 66092

Phillip R. Martens
14480 NW 64th Ter.
Kansas City, MO 64152

The Guirl Law Firm, LLC
1010 Market Street, Suite 1600
St. Louis, MO 63101

James N. Guirl II
722 Dominion Drive
St. Louis, MO 63131

*/s/Stephanie L. Gutwein*

US.134769951.01